IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PUEBLO OF POJOAQUE, POJOAQUE
PUEBLO GAMING COMMISSION,
and POJOAQUE GAMING INC,

    Plaintiffs,

v.                                                   Civ. No. 1:21-cv-00373 MIS/JHR

HONORABLE MATTHEW J. WILSON,
District Judge, and HENRY MARTINEZ,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiffs Pueblo of Pojoaque, Pojoaque Pueblo Gaming Commission, and Pojoaque Gaming, Inc.'s (collectively, "the Pueblo") Motion for Summary Judgment. ECF No. 25. Defendants Henry Martinez and the Honorable Matthew J. Wilson, respectively, filed responses in opposition. ECF Nos. 28, 29. The Pueblo replied. ECF Nos. 31, 32. For the reasons that follow, the Court will grant summary judgment and enter the requested declaratory relief.

## BACKGROUND

The essential facts of this case are undisputed. On May 25, 2018, Defendant Henry Martinez was visiting the Cities of Gold Casino in Santa Fe County when he slipped and fell while walking across the casino floor.[1] The Cities of Gold Casino sits on Pueblo

---

[1] Mr. Martinez purports to dispute this material fact. However, Mr. Martinez's own statement of fact reads: "Defendant Henry Martinez *was walking across the Cities of Gold Casino gaming floor* when he slipped and fell while engaging in Class III gaming." ECF No. 28-1 at 3 (emphasis added). Likewise, the video exhibit lodged by the Pueblo unequivocally shows that Mr. Martinez was walking across the floor when he fell. *See* ECF No. 15, Exhibit B. Whether Mr. Martinez was engaged in Class III gaming when he fell is a question of law, but it is undisputed that he was walking across the casino floor.

1

land and is operated by Plaintiff Pojoaque Gaming, Inc., which in turn is owned by Plaintiff Pueblo of Pojoaque, a federally recognized Indian tribe.

Mr. Martinez filed suit in the First Judicial District Court of New Mexico on December 9, 2020, alleging negligence claims against defendants Cities of Gold Casino, The Pueblo of Pojoaque, Pojoaque Pueblo Gaming Commission, and Pojoaque Gaming, Inc.[2] ECF No. 1-2. The Pueblo moved for dismissal on the basis that the state court lacked subject matter jurisdiction. The motion was denied on April 5, 2021. ECF No. 1-4. On April 23, 2021, with the state court suit ongoing, the Pueblo filed the present action in federal court seeking a declaration that the state court lacks jurisdiction over Mr. Martinez's claims.[3] ECF No. 1. The federal complaint names Mr. Martinez and the Honorable Matthew J. Wilson, who is the presiding state court judge, as Defendants.

The Pueblo moved for summary judgment in this case on August 25, 2021. ECF No. 25. Each Defendant opposes. Mr. Martinez argues that summary judgment should be denied because there is a genuine dispute of material fact about whether he was engaged in Class III gaming at the time of the accident.[4] ECF No. 28-1. Judge Wilson

---

[2] Cities of Gold Casino is named as a defendant to the state court action, but not as a plaintiff to the federal action. Because all state court defendants are Pueblo-affiliated the Court refers to them collectively as "the Pueblo" without distinction.

[3] Specifically, the Complaint seeks an order: "(1) Declaring that the Indian Gaming Regulatory Act does not permit the shifting of jurisdiction from tribal courts to state courts over tort claims like those brought in the *Martinez* Lawsuit; [and] (2) Declaring that the New Mexico state courts do not have jurisdiction over the *Martinez* Lawsuit[.]" ECF No. 1 at ¶ 17.

[4] Mr. Martinez also argues in his response brief that there is no case or controversy remaining because he filed suit in tribal court. ECF No. 28-1 at 3–6. The brief incorporates by reference the arguments made in a previously-filed Motion to Dismiss. ECF Nos. 12, 28-1 at 3. The Motion to Dismiss was withdrawn on January 31, 2022, after the tribal court case concluded. ECF No. 36. The Court infers that Mr. Martinez's mootness argument with respect to summary judgment is likewise withdrawn. In any event, no party has indicated that the state court case is concluded—only that it was stayed pending the outcome of this federal action. ECF Nos. 12-1, 12-2. Accordingly, the Court finds that a live controversy exists as to the state court's jurisdiction over Mr. Martinez's claims.

asks the Court to abstain from deciding the case pursuant to *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), and the Declaratory Judgment Act. ECF No. 29.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once that threshold is met, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. In applying the summary judgment standard, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017) (citation omitted).

## DISCUSSION

### I. IGRA and Tort Claim Jurisdiction

The New Mexico court asserts jurisdiction over Mr. Martinez's claims pursuant to the Indian Gaming Compact ("Compact") between the Pueblo and the State of New Mexico. ECF No. 1-3. The Compact was created in compliance with the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721, which "creates a framework for

3

regulating gaming activity on Indian lands." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 790 (2014). An Indian tribe may only conduct Class III gaming—which includes casino games and slot machines—pursuant to a compact negotiated with the surrounding state. *Id*. (citing 25 U.S.C. § 2710(D)(1)(C)).

The Compact between the Pueblo and the State of New Mexico provides, in relevant part, that visitors to the Pueblo's gaming facilities may bring a claim for bodily injury:

> in state district court, including claims arising on tribal land, unless it is finally determined by a state or federal court that the IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court.

ECF No. 1-3 at 6. State courts may exercise jurisdiction over claims arising on Indian land "only with clear congressional authorization." *Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence*, 22 F.4th 892, 903 (10th Cir. 2022) (quotation omitted). Therefore, Mr. Martinez's state court claims against the Pueblo are only viable if the IGRA permits the shifting of jurisdiction over his claims.

The difficulty in this case arises from contradictory rulings by the Tenth Circuit Court of Appeals and the New Mexico Supreme Court. First, in *Doe v. Santa Clara Pueblo*, the New Mexico Supreme Court held that "state courts have jurisdiction over personal injury actions filed against Pueblos arising from negligent acts alleged against casinos owned and operated by the Pueblos and occurring on pueblo lands." 154 P.3d 644, 646 (N.M. 2007). Under this interpretation, New Mexico's courts clearly have jurisdiction over Mr. Martinez's claims. Subsequently, however, in *Navajo Nation v. Dalley*, the Tenth Circuit held that the IGRA does not authorize tribes to shift jurisdiction over slip-and-fall tort claims to state courts unless those claims arise from "the actual

4

playing of Class III games." 896 F.3d 1196, 1216 (10th Cir. 2018). Quoting Supreme Court precedent, the Tenth Circuit concluded this was limited to "the stuff involved in *playing* class III games," i.e., "each roll of the dice and spin of the wheel." *Dalley*, 896 F.3d at 1207 (emphasis in original) (quoting *Bay Mills*, 572 U.S. at 792). Under this construction, the Pueblo contends, New Mexico's courts have no jurisdiction over Mr. Martinez's claims.

There is no question that this Court is bound by the Tenth Circuit's holding in *Dalley*. But New Mexico state courts, including the First Judicial District Court in the case at bar, have continued to apply the rule of *Doe*. *See, e.g.*, *Sipp v. Buffalo Thunder, Inc.*, 505 P.3d 897, 901 n.2 (N.M. Ct. App. 2021) ("Even if we agreed that *Bay Mills* was on point, we could not depart from *Doe*, as appeals in this Court are governed by the decisions of the New Mexico Supreme Court—including decisions involving federal law, and even when a United States Supreme Court decision seems contra." (quotation omitted)). The state district court therefore finds itself in a difficult position: it must disregard either the recent federal interpretation of the IGRA or the binding precedent of its state supreme court. The Pueblo now attempts to resolve the problem by seeking declaratory relief.

## II.   *Brillhart* Discretion

The Pueblo brings its claims pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), which "confers upon courts the power, but not the duty, to hear claims for declaratory judgment." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 980 (10th Cir. 2012). The Act itself provides that "any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking

such declaration." 28 U.S.C. § 2201(a) (emphasis added). The federal courts' discretion to hear claims for declaratory relief is often referred to as "*Brillhart* discretion." *See* 316 U.S. at 491.

The Pueblo argues that the Court may not exercise this discretion because a federal question exists in this case.[5] In the Tenth Circuit, it has not been definitively settled "whether the presence of a federal question renders the exercise of *Brillhart* discretion inappropriate." *United States v. City of Las Cruces*, 289 F.3d 1170, 1184 (10th Cir. 2002). However, the court has clearly stated that "[t]he nature of the relief requested by the plaintiff, not the jurisdictional basis of the suit, is the touchstone." *Id.* at 1181. If the plaintiff requests only a declaration of its rights, and not coercive relief, "the suit is a declaratory judgment action for purposes of determining whether the district court has broad discretion under *Brillhart* to refuse to entertain the suit." *Id*. The Pueblo requests only a declaration of its rights.[6] *See* ECF No. 1. The Court therefore concludes it likely has discretion under *Brillhart* to withhold its exercise of jurisdiction. No definitive determination is required, however, because the Court would in any case decline to exercise *Brillhart* discretion.

In deciding whether to hear claims for declaratory relief where duplicative state proceedings exist, the court considers the following factors:

---

[5] The Pueblo is correct. Its claim "that federal law precludes state-court jurisdiction over a claim against Indians arising on the reservation . . . presents a federal question that sustains federal jurisdiction." *Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence*, 875 F.3d 539, 540 (10th Cir. 2017).

[6] The Pueblo argues that *Brillhart* discretion is unavailable because its case "involves good faith claims for injunctive relief." ECF No. 31 at 5. These claims, however, appear nowhere in the Complaint. The Court finds that the exercise of its discretion is not foreclosed by hypothetical future claims for injunctive relief.

6

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (quoting *Allstate Ins.* Co. *v. Green,* 825 F.2d 1061, 1063 (6th Cir. 1987)).

The Court finds that the first and second factors weigh in favor of exercising jurisdiction. A declaratory judgment by this Court would settle completely the controversy of whether Mr. Martinez's claims can proceed in state court. *C.f. City of Las Cruces*, 289 F.3d at 1187 (upholding the district court's exercise of discretion to "avoid[] a piecemeal approach" to adjudicating the parties' rights). It would serve a useful purpose by relieving the Pueblo of its burden to defend against claims in a court without jurisdiction. An Indian tribe, "with its 'sovereign status,' 'should not be compelled to expend time and effort on litigation in a court that does not have jurisdiction.'" *Lawrence*, 22 F.4th at 909–10 (quoting *Kiowa Indian Tribe of Okla. v Hoover*, 150 F.3d 1163, 1171–72 (10th Cir. 1998)). There is, by the same token, "a substantial interest in deciding these issues without delay." *Mhoon*, 31 F.3d at 984. New Mexico's lower courts consider themselves bound by *Doe* and, accordingly, will not apply *Dalley*. Until and unless the New Mexico Supreme Court or the United States Supreme Court grants certiorari, a parallel proceeding in this Court is the only way to effectuate the Tenth Circuit's holding that the state courts lack jurisdiction over slip-and-fall tort claims on Indian land.

In light of this conundrum and the limited available remedies, the Court does not find, as to the third factor, that the Pueblo has engaged in procedural fencing. Although the Court need not and does not settle the issue here, the Pueblo offers a reasonable, good faith argument that removal was unavailable because neither diversity of citizenship nor a federal question exists on the face of Mr. Martinez's complaint. *See* ECF No. 31 at 7. Although the Pueblo may appeal an unfavorable state court ruling, the Pueblo adduces evidence that the New Mexico Supreme Court has denied review on at least one occasion when faced with the opportunity to overturn *Doe*. ECF No. 31-4 (denying certification from the New Mexico Court of Appeals to resolve the tension between *Doe* and *Dalley*). The Pueblo is meanwhile obliged to expend time and effort on litigating Mr. Martinez's claims despite the state courts' lack of subject matter jurisdiction. The Court is satisfied that the Pueblo did not file in federal court merely for the purpose of procedural fencing.

For the same reasons, in considering the fifth factor, the Court does not find that an alternative remedy would be better or more effective. To be sure, a determination by the New Mexico Supreme Court that accords with *Dalley*—or any determination by the United States Supreme Court—is the surest way to prevent this conflict from occurring in future. But with respect to the instant case, specifically, it does not appear that a state court appeal will give better or more effective relief than the federal court's declaratory judgment.

The fourth factor—whether the requested declaratory judgment would increase friction between the federal and state courts or improperly encroach upon state jurisdiction—merits careful consideration. The Court is reluctant, as a general matter, to interfere with judicial action of the state courts. However, the Court is also cognizant that

8

the Tenth Circuit has repeatedly interceded in cases where state courts lack jurisdiction over claims arising on Indian land—including, notably, in *Dalley*. 896 F.3d at 1218. It is precisely because the state court lacks jurisdiction that the interference, in this context, is minimal. *See Lawrence*, 22 F.4th at 910 (rejecting argument that enjoining a state court action would adversely affect Utah's interest in adjudicating contract disputes, because, given its lack of jurisdiction, "Utah had no such interest to begin with"); *Seneca-Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 716 (10th Cir. 1989) ("The federal nature of the law and of the issues to be decided, combined with this lack of state jurisdiction, reduce the State's interest in this litigation to the vanishing point.").

In sum, having considered the relevant factors, the Court cannot find that "the controversy would be better settled in state court." *City of Las Cruces*, 289 F.3d at 1187. Assuming *arguendo* that *Brillhart* discretion is available, the Court declines to exercise it and will proceed to the merits of the Pueblo's claim.

## III.   Jurisdiction Over Mr. Martinez's Claims

It is undisputed that Mr. Martinez's injury occurred while he "was walking across the Cities of Gold Casino gaming floor." ECF No. 28-1 at 3. Mr. Martinez states in his brief, though not in his state court complaint, that he "had just lost all his money in a slot machine and was walking to an ATM to retrieve more money when he slipped and fell."[7] ECF No. 28-1 at 1. Mr. Martinez cites no evidence to support this fact. Argument by counsel "is not evidence, and cannot provide a proper basis to deny summary judgment."

---

[7] In his state court First Amended Complaint, conversely, Mr. Martinez alleges that he "was walking on the gaming floor on his way to play a slot machine" when he slipped and fell on a plastic bag. ECF No. 31-1 at ¶ 12. It is therefore not quite clear whether he was walking toward the ATM or the slot machine when he fell. Either way, as explained herein, the IGRA does not permit shifting of jurisdiction to the state courts.

*Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009). Nevertheless, the Court will assume for the sake of argument that Mr. Martinez has shown he was walking to an ATM to retrieve more money at the time of his fall.

Although *Dalley* did not "categorically negate the possibility" that some tort claims might properly be heard in state court, 896 F.3d at 1210 n.7, the possibility was sharply curtailed. The Tenth Circuit gave the following examples of claims that *might* permit the shifting of jurisdiction under the IGRA:

> Consider, for example, a casino patron at a roulette table: during the course of the game, an errant ball flies and hits the patron in the eye, causing damage to the patron. Or, in a different situation, a patron is playing on a dysfunctional slot machine that electrocutes the patron, again resulting in some harm. In both of those instances, it is at least arguable that the patron's injuries resulted directly from gaming activity, within the meaning of *Bay Mills* . . . .

*Id.* The circumstances of Mr. Martinez's injury are easily distinguishable. Although Mr. Martinez contends he was engaged in Class III gaming while walking across the casino floor, the Court finds that his slip-and-fall claim is analogous to the one in *Dalley* for purposes of determining jurisdiction. Mr. Martinez urges a distinction between his case—in which he was allegedly walking toward an ATM—and *Dalley*, where the plaintiff was in the casino bathroom. But the holding of *Dalley* draws no apparent distinction between casino visitors who need to withdraw money from an ATM between games, and casino visitors who need to use the restroom. Mr. Martinez did not sustain his injury in the course of "the betting of chips, the folding of a hand, or suchlike." *Dalley*, 896 F.3d at 1207. His injury occurred when he was "in proximity to" these Class III gaming activities but was not "actually involved in the *playing* of the game." *Id*. (emphasis in original). The Court

therefore finds, pursuant to *Dalley*, that the IGRA does not permit the shifting of jurisdiction over Mr. Martinez's claims to the state courts.

For the same reasons, the Court finds that further discovery to determine "what Defendant Martinez was doing just prior to walking into the area where he slipped and fell," ECF No. 28-1 at 7, would be fruitless because Mr. Martinez's prior actions are immaterial to the legal analysis. *See* Fed. R. Civ. P. 56(d). Mr. Martinez's request for further discovery is therefore denied.

## IV.   Remedy

For the reasons stated above, the declaratory judgment requested in the Complaint appears consistent with Tenth Circuit precedent, tailored to the needs of the case, and warranted by the underlying facts. *See* ECF No. 1 at ¶ 17. The Court notes that the declaratory relief sought by the Pueblo[8] is virtually identical to the declaratory relief granted, at the Tenth Circuit's direction, in *Dalley*. *See* 896 F.3d at 1218; Civ. No. 1:15-cv-00799 MV/KK, at ECF No. 36. It will therefore be entered.

In addition to a declaratory judgment, the Pueblo requests "the Plaintiffs' costs and fees incurred in prosecuting this action and in defense of the underlying case in the First

---

[8] The Court refers here to the declaratory relief requested in the Pueblo's Complaint. *See* ECF No. 1 at ¶ 17. In its briefs, the Pueblo requested substantially broader relief: a declaration "that the exclusive venue for unintentional torts of whatever kind and character, occurring in Indian Country at Indian gaming facilities operating under the auspices of IGRA, shall be in the tribal courts." ECF No. 25-1 at 14. In other words, the Pueblo would like this Court to declare that "torts occurring on Indian premises . . . should *categorically* never be viewed as being directly related to the licensing and regulation of gaming activity." *Id*. at 12 (emphasis in original). Such a holding would be in direct contravention of *Dalley*. *See* 896 F.3d at 1210 n.7 ("[W]e do not intend by this holding to categorically negate the possibility that certain classes of tort or personal-injury claims stemming from conduct on Indian land might conceivably satisfy the statutory conditions for tribal allocation of jurisdiction to the states[.]"). Therefore, the Court will enter a declaration to the effect—as originally requested—that "the Indian Gaming Regulatory Act does not permit the shifting of jurisdiction from tribal courts to state courts over tort claims *like those brought in the* Martinez *Lawsuit*." ECF No. 1 at ¶ 17 (emphasis added).

Judicial District." ECF No. 1 at ¶ 17. The Declaratory Judgment Act makes no specific provision for attorney fees or costs. It provides that "further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. However, "§ 2202 does not authorize an independent grant of attorneys' fees that is not otherwise authorized by statute, contract, or state law." *Schell v. OXY USA, Inc.*, 814 F.3d 1107, 1127 (10th Cir. 2016). Because the Declaratory Judgment Act does not independently authorize an award of attorney fees or costs and because the Pueblo identifies no other authority, the request for fees and costs will be denied.

Finally, in its briefing—though not in its Complaint—the Pueblo asks that the Court "authorize" it to seek future injunctive relief if the state court action proceeds. ECF No. 25-1 at 14. The Court is aware of no authority that would prevent the Pueblo from seeking an injunction without such prior authorization, and the Pueblo cites none. Accordingly, the Court will consider issues related to injunctive relief only when and if they arise, and makes no special grant of permission herein.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 25) is **GRANTED**. Plaintiff's request for attorney fees and costs is **DENIED**.

It is hereby ORDERED that judgment shall be **ENTERED** in Plaintiffs' favor, **DECLARING** as follows:

1. New Mexico's First Judicial District Court lacks jurisdiction over Mr. Martinez's claims in *Henry Martinez v. Cities of Gold Casino, et al.*, No. D-101-CV-2020-02387.

2. The Indian Gaming Regulatory Act does not permit the allocation of jurisdiction, by Indian tribes to the states, over tort claims like those brought by Mr. Martinez in *Henry Martinez v. Cities of Gold Casino, et al.*, No. D-101-CV-2020-02387, pending in the First Judicial District. This declaratory judgment is limited to the circumstances presented in Mr. Martinez's state court action.

**IT IS SO ORDERED.**

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE